# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

PAUL W. CARTER,
Petitioner,

v.

ADAMS COUNTY
COURT OF COMMON PLEAS,
Respondent.

Case No. 1:17-cv-650

Black, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, currently on a pre-trial release bond,[1] has filed through counsel a petition for a writ of habeas corpus under 28 U.S.C. § 2241 to prevent further prosecution in the Adams County Court of Common Pleas after a mistrial was declared. (Doc. 1). Respondent opposes the petition. (Doc. 14). Petitioner has filed a traverse (Doc. 18), to which respondent has filed a sur-reply (Doc. 22).

## I    PROCEDURAL HISTORY

### State Trial Proceedings

In June 2013, the Adams County, Ohio, Grand Jury returned a four-count indictment against petitioner. (*See* Doc. 12, Ex. 1). The first count alleged rape involving petitioner's granddaughter, M.S., with a specification that the victim was under ten years old; the second count alleged sexual battery involving Heather (petitioner's daughter and M.S.'s mother); and the third and fourth counts alleged rape involving Heather. (*See id.*; *see also* Doc. 12, Ex. 5; Doc. 1, at PageID 7, 10-11). Prior to trial, one of the counts of rape involving Heather (Count Four) was dismissed. (Doc. 12, Ex. 6). On July 29, 2014, the case proceeded to a jury trial on the remaining three counts. (*See* Docs. 6, 7).

---

[1]Although released on bond, petitioner is "in custody" for habeas purposes. *See Delk v. Atkinson*, 665 F.2d 90, 93-94 (6th Cir. 1981).

At trial, the State's first witness was M.S. She was then ten years old. (Doc. 6, at PageID 320). M.S. testified about the allegations that formed the basis of Count One of the indictment. More specifically, M.S. testified that she called the "part [of the body] that a girl goes pee out of" a "cookie" and a "kitty cat." (Doc. 6, at PageID 332, 334-35). She also testified that she knew the same part is also called a vagina. (Doc. 6, at PageID 334). According to M.S., the alleged incident occurred on the day of her fourth birthday party. (Doc. 6, at PageID 340, 344-45). M.S. testified that she was "sitting in the living room watching Winnie the Poo" and was wearing a princess shirt and pajama pants. (Doc. 6, at PageID 347, 349-50). M.S. testified that her grandmother and sister had gone to get her birthday cake and that when the alleged incident occurred she and petitioner were alone in the living room. (Doc. 6, at PageID 345-46). M.S. further testified that "[petitioner] grabbed [her] by [her] arms and [her] legs together and tied them up together and put duck tape on [her] mouth and stuck his finger in [her] kitty cat." (Doc. 6, at PageID 350). She testified that petitioner only stopped when he heard a car door slam. (Doc. 6, at PageID 354). M.S. testified that when petitioner heard the car door he untied her, washed his hands, hid the rope he had used to bind her arms and legs, and threated to spank her if she told anyone. (Doc. 6, at PageID 354-55).

On cross-examination, the following exchange occurred between M.S. and defense counsel as to the timing of the alleged incident:

> Q. And what time of day was this?
>
> A. This was four hours before my birthday party.
>
> Q. How did you determine that it was four hours?
>
> A. Because my birthday party was at 6:15 and it was like in the morning.

(Doc. 6, at PageID 359). Later during cross-examination M.S testified that the incident occurred "a couple hours before" her birthday party. (Doc. 6, at PageID 373). She then corrected herself, saying: "No, it was around, it was around 4 hours, something like that." (Doc. 6, at PageID 374). When asked on cross-examination if she knew "what time in the afternoon" the alleged incident occurred, she said: "No." (Doc. 6, at PageID 374). M.S. did testify that it was the "day of [her] birthday party" and as to the date of party. (Doc. 6, at PageID 374). Further, M.S. testified that she "didn't tell anyone about [the alleged incident] for a long time." (Doc. 6, at PageID 355). When asked why she waited, M.S. testified that she "was afraid [petitioner] was going to punish [her]." (Doc. 6, at PageID 355). M.S. testified that eventually she told her friend. (Doc. 6, at PageID 355). M.S. further testified that the only other people she told about the alleged incident were her mom, the prosecutor, and "Doctor's Officer, Cincinnati Children's." (Doc. 6, at PageID 357, 365-66).

The State then proceeded to call as witnesses the social worker (Linda Smets-Ullrich) at Children's Hospital who interviewed M.S. (*see* Doc. 6, at PageID 387-421); the investigator at the Prosecutor's Office (Kenneth Dick) who investigated the allegations of sexual abuse against petitioner (Doc. 6, at PageID 423-460); and Heather, the alleged victim in Counts Two and Three of the indictment (Doc. 7, at PageID 472-559).

Following Heather's testimony, the State indicated that it had no additional witnesses. (Doc. 7, at PageID 559). Thereafter, defense counsel moved for acquittal, which the trial court denied. (Doc. 7, at PageID 567-76).

In petitioner's case in chief, defense counsel called Joan Disher (Heather's former mother-in-law) (Doc. 7, at PageID 597-07), John Yates (an ex-boyfriend of Heather's) (Doc. 7, at PageID 627-31), John Dodds (an acquaintance of Heather's) (Doc. 7, at PageID 632-38), Karen Rowe

3

(Heather's aunt) (Doc. 7, at PageID 644-49), James Scott (an ex-husband of Heather's) (Doc. 7, at PageID 652-55), Eli Hill (Hill) (an ex-husband of Heather's) (Doc. 7, at PageID 656-62), and Paul Carter, Jr. (Heather's brother and petitioner's son) (Doc. 7, at PageID 664-77) to testify that Heather had a reputation for being untruthful. Hill also testified that he was at petitioner's house on the day of the birthday party from about 10:00 or 11:00 a.m. until the party, which started at about 6:00 p.m., ended. Hill testified that when he left the house after the party he took M.S., M.S.'s sister, and Heather with him. (Doc. 7, at PageID 658-661). Petitioner's son testified generally about his parents' work schedules as of the time of the events alleged in Counts Two and Three of the indictment. (Doc. 7, at PageID 665-67; 672-75). Petitioner's son also testified that "[n]othing about whether [petitioner] was taking a day off would really stick out in [his] mind" (Doc. 7, at PageID 674) "unless [they] had plans to do something" (Doc. 7, at PageID 675).

Petitioner also called Larry Baker (petitioner's pastor) (Doc. 7, at PageID 610-14), Calvin Daniel (an individual who attended church with petitioner) (Doc. 7, at PageID 615-17), James Crase and Sandy Crase (neighbors of petitioner who also share grandchildren with him) (Doc. 7, at PageID 619-26), and Lisa Tumbleson (a former day care provider for M.S. and her sister) (Doc. 7, at PageID 638-43) to testify that petitioner had a reputation for being truthful. Chancy Carter, petitioner's daughter-in-law, testified that she had left her own children with petitioner and his wife. (Doc. 7, at PageID 683). The defense's final witness was Gladys Elaine Carter (Gladys) (petitioner's wife, mother of Heather, and grandmother of M.S.).

In regard to M.S.'s fourth birthday party, the following exchange occurred on direct examination between defense counsel and Gladys:

Q. Was Paul there?

A. He had to work that day.

Q. When did he get there?

A. He wasn't there until later on in the afternoon.

(Doc. 7, at PageID 697).

Following Gladys's answer, the State objected on the ground that the defense had violated

Ohio Criminal Rule 12.1 by failing to file a notice of alibi. (Doc. 7, at PageID 697). The trial

court then held a hearing outside the presence of the jury. During the hearing, Gladys stated that

petitioner got home from work on the day of the party around 3:30 p.m. (Doc. 7, at PageID 702).

Thereafter, the following exchange occurred between defense counsel (Mr. Hapner) and the trial

court as to why defense counsel had not disclosed Gladys's testimony as an alibi:

> MR. HAPNER: Your Honor, in order to give notice of alibi we would have
> to know, we know the place and the date.
>
> THE COURT: You've known since yesterday. Did you notify the State of
> Ohio that you may not have had seven days notice, did you notify the State
> of Ohio of this?
>
> MR. HAPNER: No, the fact of the matter is it didn't come up until right
> now. We were aware that he might have worked that morning, but we had
> no idea until yesterday, we thought actually that the crime was committed
> at night.
>
> THE COURT: After the birthday party?
>
> MR. HAPNER: Uh-uh.
>
> THE COURT: But as of yesterday you heard the testimony and you knew
> there was some question that Mr. Carter was not there?
>
> MR. HAPNER: He was there at the birthday party and before on the 26th
> day of November.
>
> THE COURT: Mr. Hapner, you knew the time, I think you inquired, you
> asked several questions about the alleged victim of the time and you
> challenged her on some of her calculations, did you not?
>
> MR. HAPNER: I did, but that's the reason for that, well, first of all it took
> us by surprise, a great deal of what she testified to took us by surprise. But,

the time had not come up before, my assumption was it took place in the evening some time.

THE COURT: So, once the time did come up and you were fully aware of it and you cross-examined her on that and you knew that Mr. Carter was not there on certain parts of that date did you notify the State that potentially there was an alibi as required under 12.1?

MR. HAPNER: No, I did not notify the State as to an alibi because I did not then or today consider it an alibi.

THE COURT: All right. An alibi is that a person couldn't have committed a crime because they were not there at the time of the offense, correct?

MR. HAPNER: That's correct.

THE COURT: Is this not the proffered testimony that he didn't get home until 3:00 or 3:30, which certainly he could not have been at the location of the alleged offense at the time of the offense, is that not an alibi?

MR. HAPNER: The State may consider it so, but from what we know it's not an alibi.

THE COURT: What does that mean?

MR. HAPNER: That means that going into this trial seven days prior to we had no idea they claimed it took place at 2:00 o'clock in the afternoon.

THE COURT: I have acknowledged that. But when you knew yesterday morning—

MR. HAPNER: Well, I really didn't know about his working until yesterday evening when we talked.

THE COURT: Did you declare it this morning?

MR. HAPNER: No.

THE COURT: Did you declare it right after lunch?

MR. HAPNER: No.

(Doc. 7, at PageID 706-08).

Following the above exchange, the State moved for a mistrial. (Doc. 7, at PageID 708-09). Defense counsel did not explicitly object to the granting of the mistrial at this time but offered as an alternative to a mistrial that the court could "order us just to go around when he got home and what time he got home." (Doc. 7, at PageID 709). Implicitly rejecting defense counsel's suggestion, the trial court called the jury back to the courtroom and declared a mistrial. (Doc. 7, at PageID 710).

After discharging the jury, the court explained, in part:

> Please be seated. In issuance of this mistrial the Court will find that the mistrial was occasioned by the acts of the defense in proffering testimony in violation of 12.1, failure to give notice timely when known. Mr. Hapner has suggested that he knew as of last night of these matters, he never disclosed these matters to counsel that there would be alibi in this matter, he had full opportunity to speak to the witness in this case, being Ms. Carter, and he has, I assume, spoken to her about the testimony. With that said, the Court finds that because of the mistrial being occasioned and caused by defense that this would not be subject to double jeopardy for purposes of re-trial.

(Doc. 7, at PageID 710-11). Defense counsel asked the court to note his exception to the declaration of mistrial on the basis that "[t]he notice of alibi . . . is not prejudicial error to such extent that would require a mistrial." (Doc. 7, at PageID 711). In response, the trial court further explained:

> [T]he Court would find no interest in justice that the rules of evidence are very specific, the rules of discovery are very specific, while the Court accepts that you may not have known seven days ago that was the basis, if you had not determined that was the basis, when did you know that there was a full fledged alibi, that apparently was last evening. And did you ever disclose it, and it was never disclosed. Maybe this morning had it been disclosed there could have been curative affects [sic]. But, there was no disclosure for reasons that are personal to you that has caused this mistrial. And the prejudicial affect [sic] of the testimony we can not [sic] unring this bell. So that is the basis for the mistrial. I'll still note your exceptions to the Court's ruling. That shall conclude the hearing at this time.

(Doc. 7, at PageID 712). Defense counsel did not request a severance of the other two counts of the indictment.

The mistrial was journalized on August 12, 2014. (Doc. 12, Ex. 9). On May 6, 2015, defense counsel filed a notice of alibi. (Doc. 12, Ex. 11). Prior to the second trial date, petitioner, through new counsel, filed a motion to dismiss based on double jeopardy grounds. (Doc. 12, Ex. 15). The trial court denied the motion, explaining in relevant part:

> The Court here was in the best position here to judge whether or not a fair trial was compromised by failure to file an Alibi Notice. Having sat six feet away from the witnesses and Counsel, the Court is most capable at ascertaining meaning behind the happenings at trial.
>
> The Court also finds that the nature of the offenses alleged, and the fact that the victims were mother and daughter, intertwines said offenses to the extent that a curative instruction would not have removed the unfair nature created by the failure to provide an Alibi Notice. Further, the Court finds trial counsel failed to request severance of counts two and three with respect to the mistrial notion and the defendant has waived his objection.
>
> After listening to the questioning of witnesses and observing the strategy of both sides, the Court finds that Defense Counsel's failure to provide the State with an Alibi Notice warrants the declaration of a mistrial.

(Doc. 12, Ex. 18, at PageID 860).

**State Appeal Proceedings**

Petitioner appealed the trial court's denial of his motion to dismiss to the Ohio Court of Appeals, Fourth Appellate District, raising the following two grounds for relief:

FIRST ASSIGNMENT OF ERROR:

THE TRIAL COURT DECLARED A MISTRIAL AND DISCHARGED THE JURY WITH RESPECT TO COUNT I OVER DEFENSE OBJECTION, AND WITHOUT MANIFEST NECESSITY. FURTHER, PROSECUTION OF COUNT I VIOLATES THE DEFENDANT'S RIGHT TO BE FREE FROM DOUBLE JEOPARDY AS GUARANTEED UNDER THE FIFTHE [SIC] AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION SO THAT THE COURT

ERRED IN DENYING THE DEFENDANT'S MOTION TO DISMISS ON THIS GROUND.

SECOND ASSIGNMENT OF ERROR:

THE TRIAL COURT DECLARED A MISTRIAL AND DISCHARGED THE JURY WITH RESPECT TO COUNTS II AND III OVER DEFENSE OBJECTION AND WITHOUT MANIFEST NECESSITY. FURTHER PROSECUTION OF THESE COUNTS VIOLATES THE DEFEN[D]ANT'S RIGHT TO BE FREE FROM DOUBLE JEOPARDY AS GUARANTEED UNDER THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION SO THAT THE COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO DISMISS ON THIS GROUND.

(Doc. 12, Ex. 21, at Page ID 877).

On August 9, 2016, the state court of appeals affirmed the decision of the trial court. *State v. Carter*, No. 15-CA-1015, 2016 WL 4268774, at *1 (Ohio Ct. App. Aug. 9, 2016) (Doc. 12, Ex. 24). The Ohio Supreme Court denied further review. *State v. Carter*, 71 N.E.3d 298 (Ohio 2017) (table). Thereafter, the trial court stayed proceedings pending decision in this habeas case. (*See* Doc. 12, Ex. 29, at PageID 996).

### Federal Habeas Corpus Proceedings

In the instant habeas petition, petitioner raises three grounds for relief:

**GROUND ONE:** The trial court granted the state's motion for mistrial over defense objection and without a manifest necessity for mistrial.

**SUPPORTING FACTS:** Under the first of three counts which were being tried, [petitioner] was charged with engaging in sexual conduct with a granddaughter on her fourth birthday, ___ 2007.[2] In the amended Bill of Particulars the date was specified and the location identified as being [petitioner's] home where he and his wife were raising the grandchild and her younger sister. The state did not specify in the Bill of Particulars, or in any discovery materials the time of day, or indicate whether the alleged activity was supposed to have occurred in the morning, the afternoon or evening hours of ___, 2007. At trial the child testified that she had talked to the prosecutor "somewhere around 10 times" before trial. Her mother testified that she and her daughter had talked with the Prosecutor 5 or 6 times. The child, now 10 years of age, testified:

---

[2]These dates were omitted in the original habeas corpus petition. (Doc. 1).

1) That the sexual conduct took place four hours before her birthday party which began at 6:15 p.m.;

2) That it occurred "like in the morning, a couple hours before the party";

3) [F]inally, that she didn't know what time in the afternoon it happened.

On the next day of trial [petitioner's] wife, grandmother to the alleged victim, testified as a defense witness concerning the identity of persons in photographs taken at the child's fourth birthday. Upon further direct examination the following occurred:

Q. Was [petitioner] there?

A. He had to work that day.

Q. When did he get there?

A. He wasn't there until later on in the afternoon.

Mr. Kelly: Your Honor, I'm voicing an objection.

The Court: 12:1?

Mr. Kelly: Yes, Your Honor.

The jury was excused and heard no further testimony. The court conducted a voir dire of [petitioner's wife], questioned her counsel, and then declared a mistrial with respect to all three counts, based upon a violation of Rule 12.1 of the Ohio Rules of Criminal Procedure rejecting Defense counsel's invitation the court . . ." order us just to go around when he got home and what time he got home" [sic].

**GROUND TWO:** The trial court declared a mistrial without allowing both parties to state their positions on the issue of manifest necessity[,] without considering the respective interests, and with [sic] exploring reasonable alternatives to a declaration of mistrial.

**SUPPORTING FACTS:** The trial transcript establishes that the State's sole argument in support of a declaration of mistrial was "In chambers, Your Honor, my position was the State was going to ask for a continuance to discovery [sic] the notice of alibi. But, I will say on further reflection based on the nature of what I have heard now and what I will call the totality of the circumstances for this entire case the State is going to move for mistrial." The Court made no inquiry as to when the State became aware of a late morning-afternoon time frame for the alleged sexual conduct[.] The defense assertion that it first became aware of this time frame

10

with the child's testimony the day before was unchallenged. There was no discussion of a curative instruction regarding the wife's testimony that "he wasn't there until later in the afternoon" or the defense proposal that the court order that there be no further testimony as to the defendant's time of arrival at his home that day.

**GROUND THREE:** The purported violation of the notice of alibi rule pertain [sic] to only one of three counts. The trial court: 1) failed to inquire of the State when in [sic] gained knowledge of the child's midday time frame for the alleged sexual conduct, a fact essential to the determination of whether the State discharged the reciprocal disclosure obligation mandated by the due process clauses of the 5th and 14th Amendments; 2) failed to [c]onsider alternative sanctions which would not impinge on the defendant's right to be free from double jeopardy; 3) failed to consider whether the affected count could be severed, permitting the remaining 2 counts involving a different alleged victim and disparate dates to be submitted to the jury.

**SUPPORTING FACTS:** Given the number of contracts [sic] that the child and her mother had with the prosecuting attorney's office prior to trial[,] the trial court's failure to make any inquiry as to when the State discovered the midday time frame seems inexplicable. The record reveals that the State considered moving for a continuance in order to discovery[sic] matters related to the defendant's work schedule on the date in question. There is no indication that the trial court considered this alternative or the use of a curative instruction. The court simply acquiesced in the State's decision to request a mistrial instead and required no explanation from the State as to why there existed a manifest necessity for such action. The mother of the child was the alleged victim in the remaining two counts. These alleged instances of sexual conduct occurred eight years prior to that alleged in the count involving the granddaughter. The mother's credibility was not entwined with her daughter's in any meaningful way at trial. The mother was not a fact witness to any of the occurrences on the child's fourth birthday. Her only testimony relevant to that count was to establish the child's date of birth. No consideration was given to allowing the trial to continue on these two counts to continue[.]

(Doc. 1, at PageID 6-7, 10-11).

In the respondent's Answer/Return of Writ, respondent asserts that petitioner's grounds for relief are either procedurally defaulted or fail on the merits. (Doc. 14). Petitioner has filed a reply in support of his petition (Doc. 18) and respondent has filed a sur-reply (Doc. 22).

## Standard of Review

In this federal habeas case, brought under 28 U.S.C. § 2241, the applicable standard of review is *de novo*. The Sixth Circuit Court of Appeals has explained:

> Congress's general grant of habeas authority to the federal courts appears in 28 U.S.C. § 2241, which extends the writ to, among others, persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). One section of the habeas statute—section 2254—concerns habeas relief available to a subset of petitioners: those "in custody *pursuant to the judgment of a State court* . . . ." *Id.* § 2254(a) (emphasis added). Although [petitioner] remains "in custody," his custody is not "pursuant to the judgment of a State court." Rather, he is in custody *pursuant to an indictment.* Section 2254, therefore, by its own terms, does not apply to [petitioner's] petition, and it would be error to apply § 2254 here. We have long recognized that pretrial detainees pursue habeas relief instead under § 2241. *See Girts v. Yanai*, 600 F.3d 576, 587 (6th Cir. 2010); *Atkins v. Michigan*, 644 F.2d 543, 546 n. 1 (6th Cir. 1981).
>
> Our review of state court decisions differs significantly depending on which section of the habeas statute applies. For habeas petitions filed under § 2254, we may not grant relief on the basis of an incorrect factual determination by a state court unless the determination was "unreasonable . . . in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). And where habeas relief under § 2254 is predicated on a state court's alleged misapplication of the law to the facts, federal relief is prohibited unless the application of Supreme Court precedent was "unreasonable." *Id.* § 2254(d)(1). Congress imposed these standards when it passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and they are intended to be difficult to meet. *Harrington v. Richter*, [562 U.S. 86, 102] (2011).
>
> The standards that apply to § 2241 petitions, by contrast, are significantly less demanding. The First, Fifth, Ninth, and Tenth Circuits have concluded that the deference that § 2254(d) requires never applies to habeas petitions brought by pretrial detainees under § 2241, and no circuit to our knowledge has held otherwise. *See Martinez v. Caldwell*, 644 F.3d 238, 242 (5th Cir. 2011); *Walck v. Edmondson*, 472 F.3d 1227, 1234–35 (10th Cir. 2007); *Stow v. Murashige*, 389 F.3d 880, 885–86 (9th Cir. 2004); *Gonzalez v. Justices of Mun. Ct. of Boston*, 382 F.3d 1, 6–7 (1st Cir. 2004), *judgment vacated on other grounds*, 544 U.S. 918, 125 S.Ct. 1640, 161 L.Ed.2d 474 (2005). As the Fifth Circuit recently stated in *Martinez*, "[t]he deferential standard afforded to state court decisions, which is specifically articulated in § 2254, is not included in the text of § 2241." [*Martinez*,] 644 F.3d at 242. Furthermore, AEDPA significantly amended § 2254(d) but left untouched § 2241, and courts operate on the assumption that "'Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another.'" *Id.* (quoting *City of Chicago v. Environmental Def. Fund*, 511 U.S.

328, 338, 114 S.Ct. 1588, 128 L.Ed.2d 302 (1994)). We agree with our sister circuits and hold that habeas petitions governed by § 2241 are not subject to the heightened standards contained in § 2254(d). Accordingly, we must conduct a de novo review of the state court proceedings in addressing [petitioner's] petition. *See Martinez*, 644 F.3d at 242; *Walck*, 472 F.3d at 1235.

*Phillips v. Court of Common Pleas, Hamilton Cty., Ohio*, 668 F.3d 804, 809–10 (6th Cir. 2012)

(footnotes omitted).

### A.    Ground One

In Ground One, petitioner asserts that: "The trial court granted the state's motion for mistrial over defense objection and without a manifest necessity for mistrial." (Doc. 1, at PageID 6). Respondent asserts that this ground does not present any constitutional basis. (Doc. 14, at PageID 1048-49). Petitioner clarifies in his reply that Ground One presents a federal due process claim under the Fourteenth Amendment. (Doc. 18, at PageID 1079-82).

"[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the Petitioner to relief." *Edwards v. Johns*, 450 F. Supp.2d 755, 756 (E.D. Mich. 2006) (quoting *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)). *See also* Rule 2(c) of the Rules Governing Section 2254 Cases (providing that a habeas petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground").[3] Although petitioner apparently raised his due process claim in the state courts (*see* Doc. 12, Ex. 15, at PageID 838; Ex. 21, at PageID 889; Ex. 26, at PageID 948), he did not identify in his federal habeas corpus petition the federal constitutional right allegedly violated. (*See* Doc. 1, at PageID 6-7). However, the Court need not determine whether petitioner adequately pleaded his due process claim in this case. Even

---

[3]The Rules Governing § 2254 Cases also apply to habeas corpus petitions filed under § 2241. *See* Rule 1(b), Rules Governing § 2254 Cases.

assuming, arguendo, that petitioner properly pleaded Ground One as a due process claim,

petitioner has failed to establish a basis for habeas corpus relief.

As set forth above, the trial court ordered a mistrial in this case after finding that

defense counsel proffered testimony in violation of Ohio Criminal Rule 12.1. Pursuant to

Rule 12.1, a defendant who intends to offer alibi testimony:

> shall, not less than seven days before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi. The notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi, unless the court determines that in the interest of justice such evidence should be admitted.

Ohio Crim. R. 12.1. Petitioner concedes that he did not file a notice of alibi. It is his position,

however, that the trial court violated his due process rights under *Wardius v. Oregon*, 412 U.S.

470 (1973), by enforcing Rule 12.1 because the State failed to inform him prior to trial of the

timing of the alleged offense and provided no explanation for that failure. (Doc. 18, at PageID

1079-82).[4]

"[E]rrors in the application of state law, especially rulings regarding the admission or

exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding."

*Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). "A federal court may not issue the writ [of

habeas corpus] on the basis of a perceived error of state law" unless the error is "sufficiently

egregious" as to amount to a denial of fundamental fairness. *Pulley v. Harris*, 465 U.S. 37, 41

(1984). In *Wardius*, the Supreme Court held that "the Due Process Clause of the Fourteenth

---

[4]Although the Fourth District Court of Appeals did not discuss *Wardius* in its decision (*see* Doc. 12, Ex. 24), it does appear, as noted above, that the claim was fairly presented to the state courts. (*See* Doc. 12, Ex. 15, at PageID 838; Ex. 21, at PageID 889; Ex. 26, at PageID 948). Because the claim was fairly presented to the state appellate court, the court must be treated as having decided the claim. *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Further, respondent, who was granted leave to file a sur-reply, does not contend that petitioner failed to exhaust his due process claim. (*See* Doc. 22).

Amendment forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants." *Wardius*, 412 U.S. at 472.

The record establishes that the parties engaged in reciprocal discovery. (*See, e.g.*, Doc. 12, Ex. 4, PageID 734-802). Although petitioner complains that the State did not furnish the timing of the allegations underlying Count One prior to trial and that it was unfair for the trial court to enforce Rule 12.1 without first inquiring as to when the State obtained such information (*see* Doc. 1, at PageID 7, 10; Doc. 18, at PageID 1079-82), the Due Process Clause "speaks 'to the balance of forces between the accused and his accuser.'" *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988) (quoting *Wardius*, 412 U.S. at 474). The trial court did not fault petitioner for not disclosing the alibi evidence prior to the commencement of trial, but for not disclosing it prior to Gladys's testimony. (*See* Doc. 7, at PageID 708, 711-12). Further, counsel acknowledged that he could have filed a notice of alibi in the morning or afternoon prior to petitioner's wife's testimony but did not do so. (Doc. 7, at PageID 708). Under these circumstances, petitioner has not established that the trial court's enforcement of Rule 12.1 tipped "the balance of forces" in favor of the State.

In any event, it is not clear that any alleged discovery delay on the part of the State caused petitioner's failure to provide a notice of alibi. Counsel told the trial court that he did not file the required notice because he did not consider the pertinent testimony of Gladys to be an alibi. (Doc. 7 at PageID 707) ("No, I did not notify the State as to an alibi because I did not then or today consider it an alibi."). Petitioner appears to advance the same argument in this court. (*See* Doc. 18, at PageID 1082-83). His argument is unpersuasive.

The Ohio Supreme Court has defined "alibi" as: "[a] defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of

the crime." *State v. Davis*, 880 N.E.2d 31, 74 n.1 (Ohio 2008) (quoting *Black's Law Dictionary* (8th Ed. 2004)). On cross examination, M.S. testified that the alleged conduct occurred "in the morning" of her birthday party. (Doc. 6, at PageID 359). After further questioning from defense counsel, she testified that it occurred four hours before the start of her birthday party, or at about 2:00 p.m. (Doc. 6, at PageID 359). Although M.S. later testified that the offense occurred "a couple hours before" her party (Doc. 6, at PageID 359, 373), she corrected herself by saying: "No, it was around, it was around 4 hours, something like that" (Doc. 6, at PageID 374). Defense counsel asked: "Do you know what time in the afternoon?" and M.S. responded: "No." (Doc. 6, at PageID 374).

On the issue as to whether Gladys's testimony constituted an alibi, the trial court inquired:

> THE COURT: Mr. Hapner, you knew the time, I think you inquired, you asked several questions about the alleged victim of the time and you challenged her on some of her calculations, did you not?
>
> MR. HAPNER: I did, but that's the reason for that, well, first of all it took us by surprise, a great deal of what she testified to took us by surprise. But, the time had not come up before, my assumption was it took place in the evening some time.
>
> THE COURT: So, once the time did come up and you were fully aware of it and you cross-examined her on that and you knew that Mr. Carter was not there on certain parts of that date did you notify the State that potentially there was an alibi as required under 12.1?
>
> MR. HAPNER: No, I did not notify the State as to an alibi because I did not then or today consider it an alibi.

(Doc. 7, at PageID 706-07).

Given M.S.'s testimony that the offense occurred "around, it was around 4 hours, something like that" before her birthday party (Doc. 6, at PageID 374) and Gladys's testimony that petitioner "wasn't there until later on in the afternoon" (Doc. 7, at PageID 701), which she

clarified to be around 3:30 p.m. in her *in camera* testimony (Doc. 7, at PageID 702), petitioner

has not shown that the trial court was fundamentally unfair in concluding that Gladys's

testimony was a potential alibi subject to disclosure under Rule 12.1. *See Pulley*, 465 U.S. at 41.

*See also State v. Barnes*, 896 N.E.2d 1033, 1048 (Ohio App. 2008) (noting difficulty of

pinpointing timing where child victims are involved and applying Rule 12.1 to "any potential

alibis that [the defendant] might have").

Ground One does not warrant habeas relief.

**B.    Ground Two**

In Ground Two, petitioner asserts that: "The trial court declared a mistrial without

allowing both parties to state their positions on the issue of manifest necessity[,] without

considering the respective interests, and with [sic] exploring reasonable alternatives to a

declaration of mistrial." (Doc. 1, at PageID 7). Respondent again asserts that this ground does

not present a constitutional claim. (Doc. 14, at PageID 1048-49). Alternatively, respondent

argues that this claim fails on the merits. (Doc. 14, at PageID 1054-59).

Petitioner has not stated a cognizable claim for federal habeas relief to the extent that he

alleges that the granting of the state's motion for mistrial amounted to an abuse of discretion or a

reversible error under Ohio law. The federal court has jurisdiction to review a state prisoner's

habeas petition only on the ground that the challenged confinement violates the Constitution,

laws or treaties of the United States. *See Pulley*, 465 U.S. at 41; *Estelle v. McGuire*, 502 U.S. 62,

67-68 (1991). Therefore, petitioner's claim is subject to review only to the extent he alleges a

constitutional violation. Although petitioner does not specifically mention the Fifth Amendment

in his second ground for relief, this Court understands petitioner's claim to be that his retrial is

barred by the Double Jeopardy Clause because there was no manifest necessity to declare a

17

mistral. The claim should be denied, however, because the trial court's declaration of a mistrial survives the "manifest necessity" standard.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, "protects a criminal defendant from repeated prosecutions for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982). "[I]t is well-settled that once jeopardy attaches, prosecution of a defendant other than before the original jury is barred unless '(1) there is a 'manifest necessity' for a mistrial or (2) the defendant either requests or consents to a mistrial.'" *Colvin v. Sheets*, 598 F.3d 242, 252 (6th Cir. 2010) (quoting *Johnson v. Karnes*, 198 F.3d 589, 594 (6th Cir. 1999)). As there is no dispute that petitioner did not consent to the state court's declaration of a mistrial, the Court must determine whether there was manifest necessity for the mistrial.

"Manifest necessity is not exclusively premised on protecting a defendant's rights; rather, manifest necessity balances the defendant's 'valued right to have his trial completed by a particular tribunal,' [*Arizona v.*] *Washington*, [434 U.S. 497, 503 (1978)], with 'the public's interest in fair trials designed to end in just judgments,' *id.* [at 516] (quoting *Wade v. Hunter*, [336 U.S. 684, 689 (1949)]." *Donaldson v. Bova*, 552 F. App'x 554, 562 (6th Cir. 2014).

> A trial judge may only declare a mistrial if, after "taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." [*Colvin*, 598 F.3d at 252] (quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824)). This standard, however, must not be applied mechanically: "[I]t is manifest that the key word 'necessity' cannot be interpreted literally; instead, . . . we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." [*Washington*, 434 U.S. at 506].

*Donaldson*, 552 F. App'x at 560.

Reviewing courts must be satisfied that the trial judge exercised "sound discretion" before declaring a mistrial. *Washington*, 434 U.S. at 514. In determining whether a trial judge

18

exercised "sound discretion" in declaring a mistrial, a reviewing court may consider several factors, none of which is outcome determinative. These include whether the judge acted irrationally or irresponsibly, *Washington*, 434 U.S. at 514; whether the trial judge acted deliberately or precipitately in response to the request for a mistrial, *id.*, 434 U.S. at 515; whether the judge elicited the parties' opinions on the propriety of a mistrial, *id.* at 515-16, 517; and whether the judge considered the alternatives to a mistrial, *id.* at 514, n. 34, 517, n. 39. A trial judge exercises "sound discretion" when the judge engages in "careful consideration and solicitude for the serious consequences attendant upon mistrial." *Johnson v. Karnes*, 198 F.3d 589, 596 (6th Cir. 1999) (quoting *Glover v. McMackin,* 950 F.2d 1236, 1241 (6th Cir. 1991)).

In assessing whether there was manifest necessity for a mistrial, courts apply "a sliding scale of scrutiny." *Colvin,* 598 F.3d at 253. As the Sixth Circuit explained:

> The strictest scrutiny applies when the mistrial is based on prosecutorial or judicial misconduct. *Washington*, 434 U.S. at 508. At the other end, "great deference" or "special respect" is due when the mistrial is based on a deadlocked jury. *Id.* at 509-10. Mistrials premised on the prejudicial effect of improper evidence or argument are akin to the latter situation and are also entitled to "great deference." *Id.* at 511-14.

*Colvin*, 598 F.3d at 253. The level of scrutiny applied depends upon the issues on which the mistrial was based. *United States v. Stevens,* 177 F.3d 579, 583 (6th Cir. 1999).

Where, as here, a trial court's declaration of a mistrial is based on its assessment of defense counsel's performance, a more deferential standard of review is applied to the trial court's decision. *Donaldson,* 552 F. App'x at 563 ("A stricter scrutiny of the trial court's conduct is not called for here, because the trial court is more familiar with defense counsel and had the opportunity to observe defense counsel's conduct both for the trial and the pretrial proceedings as well."). A court should be "particularly reluctant to substitute its judgment for that of the trial court when a defendant's lawyer is at fault for the mistrial." *Id.* at 564 (citing

*Colvin*, 598 F.3d at 255) ("Moreover, we should be especially reluctant to second-guess the judgment of the trial court in cases where, as here, the conduct of the defendant's own lawyer causes a mistrial.").

In the instant case, the trial court declared a mistrial after concluding that defense counsel willfully violated Rule 12.1 by not providing proper notice to the State of petitioner's alibi defense to Count One of the indictment. (Doc. 7, at PageID 712). On the "sliding scale of scrutiny," the trial court's assessment is entitled to deference. *Donaldson*, 552 F. App'x at 563. The record in this case also shows that the trial court reached its decision after hearing from both the State and defense counsel. (Doc. 7, at PageID 703-12). Thus, the trial court properly sought counsels' opinions on the propriety of a mistrial. *Washington*, 434 U.S. at 515-16, 517. Further, the record demonstrates that the trial court did consider the possibility of attempting to "cure" the prejudicial impact of Gladys's undisclosed alibi testimony but concluded that the prejudicial impact of the testimony could not be undone. (Doc. 7, at PageID 712) ("Maybe this morning had it been disclosed there could have been curative affects [sic]. But, there was no disclosure for reasons that are personal to [the defense] that has caused this mistrial. And the prejudicial affect [sic] of the testimony we can not [sic] unring this bell."). *See Washington*, 434 U.S. at 514, n. 34, 517, n. 39. After observing the trial proceedings up to the time of Gladys's testimony, the trial court found that the impact of the improper testimony could not be cured. (*See* Doc. 7, at PageID 712; Doc. 12, Ex. 18, at PageID 860). The trial court was in the best position to assess the prejudicial impact of defense counsel's failure to disclose the notice of alibi, having observed counsel's conduct within the context of the unfolding trial, and this assessment is entitled to great deference. *Washington*, 434 U.S. at 514. The trial judge, who is most familiar with the evidence

and the background of the case on trial, "is far more 'conversant with the factors relevant to the determination' than any reviewing court can possibly be.'" *Id.* (quoting *Wade*, 336 U.S. at 689). While petitioner questions the validity of the trial court's finding (*see* Doc. 1, at PageID 7), he offered no curative instruction other than defense counsel's suggestion at trial to "order us just to go around when [petitioner] got home and what time he got home" (Doc. 7, at PageID 709), which the trial court implicitly rejected. Under the totality of the circumstances, and giving the trial court appropriate deference, the undersigned finds that the trial court exercised "sound discretion" in declaring a mistrial. *Washington,* 434 U.S. at 514.[5]

Ground Two does not warrant habeas corpus relief.

## C. Ground Three

In Ground Three, petitioner contends that the trial court (1) "failed to inquire of the State when in [sic] gained knowledge of the child's midday time frame for the alleged sexual conduct, a fact essential to the determination of whether the State discharged the reciprocal disclosure obligation mandated by the due process clauses of the 5th and 14th Amendments"; (2) "failed to [c]onsider alternative sanctions which would not impinge on the defendant's right to be free from double jeopardy"; and (3) "failed to consider whether the affected count could be severed, permitting the remaining 2 counts involving a different alleged victim and disparate dates to be submitted to the jury." The first two sub-claims in Ground Three repeat claims from Grounds One

---

[5]This Court agrees with respondent (*see* Doc. 22, at PageID 1095) that *Kang v. Green,* No. 2:04-cv-801, 2006 WL 689090 (S.D. Ohio 2006), relied on by petitioner (*see* Doc. 14, at PageID 1086-89), is distinguishable. In *Kang*, the district court found that manifest necessity for a mistrial did not exist because the offending testimony— that the accident victim was not wearing a seatbelt—merely reiterated argument and evidence already before the jury and because "a curative instruction linked to the standard charge on causation would have ensured a fair trial for the prosecution." *Kang*, 2006 WL 689090, at *5. Here, petitioner does not point to other testimony establishing his schedule on the day of the birthday party or identify an instruction that would have ensured the fairness of the proceedings once Gladys suggested without prior notice that petitioner may not have been home at the time of the offense alleged in Count One.

and Two and fail to provide a basis for habeas relief for the reasons previously discussed. The third sub-claim also fails to provide a basis for habeas relief.[6]

Severance is governed by state law. *Hutchinson v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002). As such, petitioner's severance claim "will not warrant habeas relief unless the 'error rises to the level of depriving the defendant of fundamental fairness in the trial process.'" *Id.* (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993)). Petitioner has failed to make such a showing.

M.S. and Heather, the two alleged victims in this case, were mother and daughter; M.S. testified that she had talked to Heather about the allegations underlying Count One (*see* Doc. 6, at PageID 365-66); and the investigator testified that he had talked to Heather about the allegations underlying Count One (*see* Doc. 6, at PageID 431). The investigator also testified that during the investigation Heather talked to petitioner about M.S.'s allegations. (*See* Doc. 6, at PageID 455-56). Petitioner has not shown that the trial court failed to exercise sound discretion in finding that the intertwined nature of the offenses required a mistrial as to the entire case, *see Washington,* 434 U.S. at 514, let alone that the trial court's finding was fundamentally unfair, *see Hutchinson*, 303 F.3d at 731.

Ground Three does not warrant habeas relief.

## PERSONAL IDENTIFYING INFORMATION

Respondent indicates (*see* Doc. 14, at PageID 1028 n.1) that certain documents from the state court record contain personal identifying information. Specifically, respondent states that

---

[6]Respondent asserts, alternatively, that the third sub-claim is procedurally defaulted because petitioner did not seek severance at trial. "'[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits,' especially where the procedural default issue is 'complicated' and 'is unnecessary to [the] disposition of the case.'" *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (alteration in original)). Because this claim does not warrant federal habeas relief, the undersigned elects to overlook any procedural default of the claim.

personal identifying information is found in: (1) Doc. 6, PageID 286 (M.S.'s full name); (2) Doc. 12, Ex. 4, at PageID 740 (M.S.'s full name), 763 (M.S.'s full name and use of her first name), 777 (M.S.'s full name and use of her first name), and 799 (M.S.'s and her sister's full names and D.O.B.s); (3) Doc. 12, Ex. 8, at PageID 816 (M.S.'s and her sister's full names and D.O.B.s); (4) Doc. 12, Ex. 21 (Appellant's Brief) (M.S.'s and her sister's first names; M.S.'s D.O.B. at PageID 878; use of M.S.'s first name throughout brief); (5) Doc. 12, Ex. 26 (Jurisdictional Memorandum) (M.S.'s and her sister's first names; M.S.'s D.O.B. at PageID 941; use of M.S.'s first name throughout memorandum). The Clerk of Court is hereby **DIRECTED** to redact the identified privacy information from these documents.

The Clerk of Court is further **DIRECTED** to electronically file the redacted documents.

The Clerk is also **DIRECTED** to seal the original documents identified by respondent and to reflect the sealing of the documents on the docket of the Court. The original documents shall be retained under seal until further order of this Court.

### IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus be **DENIED** with prejudice.

2. A certificate of appealability[7] should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed.

---

[7]The Sixth Circuit has not yet determined whether a certificate of appealability (COA) is required to appeal a denial of a 28 U.S.C. § 2241 petition where the petitioner is challenging state pretrial detention. *Christian v. Wellington*, 739 F.3d 294, 292 n.5 (6th Cir. 2014). However, district courts in this Circuit have found that a COA is required in this circumstance. *See, e.g.*, *Smith v. Burt*, No. 2:19-cv-10159, 2019 WL 529281, at *3 (E.D. Mich. Feb. 11, 2019); see also *Hill v. Michigan*, No. 1:07-cv-271, 2007 WL 1893911, *2 & n.3 (W.D. Mich. July 2, 2007).

R. App. P. 22(b).

3. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that with respect to any application by petitioner to proceed on appeal *in forma pauperis,* an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis. See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 4/19/19

Karen L. Litkovitz
United States Magistrate Judge

PAUL W. CARTER,             Case No. 1:17-cv-650
      Petitioner,

                                    Black, J.
      v.                            Litkovitz, M.J.

ADAMS COUNTY
COURT OF COMMON PLEAS,
      Respondent.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).